Good morning and welcome to the Ninth Circuit. Before we proceed, can I just confirm, Judge Bennett, can you hear us? I can. Can you hear me, Judge Miller? Yes, thank you. Great. All right. This is the time set for argument in Newsom v. Trump. Mr. MacArthur. Thank you, Judge Miller. I may have pleased the court, Eric MacArthur, for the federal government. I would like to reserve five minutes for rebuttal, if I may. The district court in this case entered an extraordinary and, at the time, unprecedented order in joining the president from calling up the National Guard, a step the president had taken to protect federal personnel and property from violent riots in Los Angeles seeking to thwart enforcement of federal immigration law. This court correctly granted a stay pending appeal and should now vacate. The district court's erroneous order, which improperly second-guessed the president's judgment, interposed the court into the military chain of command and placed federal officers in harm's way. Suppose that we were to agree with you that there was a sufficient basis under whatever the standard of review is for the president to call out the National Guard in June. Is there any time limit on how long they can stay federalized? So there's nothing in the statute that imposes a time limit, Judge Miller. I mean, the fact that the statute says the president is unable, with the regular forces, to execute the laws, was at some distant time in the past when he decided to federalize them, right? Doesn't that suggest that it has to be tied to what current conditions are? I don't think so, because the is in subsection 3 is a condition for calling up the Guard, not for maintaining them in service. And if you look at prior versions of this statute, Judge Miller, you'll see that prior versions did have a time limit, and prior versions of this statute, for example, said that they could only be in federal service for nine months. Congress removed that time limit from the statute, and I think that's a pretty clear signal that Congress left to the president's discretion to make the determination of when the danger has sufficiently abated that he can release the officers back to state, the National Guardsmen back to state control. So, Ken, so let me follow up. Can you hear me? I can, yes, Judge Bennett. All right, so let me follow up on Judge Miller's question. Let's assume that there was a lawful call-up. Do the call-ups have to have a temporal limit? Can the president just say they're called up without putting an end date on it? I think he can do that, yes. I think the statute leads to the president's discretion to determine when the danger has abated. So let's say the president did that, and let's say, hypothetically, we were to continue to reject your argument that the call-up decision of the president is entirely unreviewable. So let's just have those as predicates. Would it be your view that no matter how much conditions on the ground change, there would be no ability, for example, the district court could review, say, in a month, six months, a year, five years, whether the conditions still support that the president was unable with the regular forces to execute faithfully the laws of the United States? Yes, Judge Bennett. I just don't see a basis in the text of the statute for a court to be making that determination. The court would have to, in essence, make up its own standard about when the National Guard is going to have to be released from service, because there's nothing in the statute, unlike the prior versions, that speaks to that question. So if, and I know I'm mixing statutes and times, but if, for example, this statute were in effect at the founding and President Washington had called up militia to deal with the Whiskey Rebellion, notwithstanding the Whiskey Rebellion having gone away, that they could be called up forever without judicial review. They could stay called up forever without judicial review. I don't think there would be judicial review of that. I do think the president, who, again, we should remember, independently takes an oath to uphold the law, you know, could be deemed to have abused his discretion in that sort of instance, but I don't see how that can be made a proper subject of judicial review under this statute. And of course, that's not the question presented in this case. They have raised that issue in the district court. They have sought to challenge the order extending the period of service for a very small number of the federalized guardsmen, and that's something that they can raise on Of course, the only issue before this court is whether the president properly federalized the guard in the first place back in June. So, would you agree that your argument wouldn't, the argument you just made, wouldn't go to a subsequent, let's say the president's original call-up had a termination date, would you agree that your argument wouldn't apply to a subsequent order of the president extending the date? I think a subsequent order of the president extending the date would not be subject to judicial review, even if you thought that the initial order was subject to judicial review. Because again, section 12406 only speaks to the calling up of the guard. There's not a word in the statute that talks about how long they can remain in federal service. There are no further questions on that, on that issue. I would like to just say a few words about the one issue on which we do disagree with the court's analysis in the stay opinion, and that's whether or not the statute vests the decision to call up the guard in the first instance in the president's unreviewable discretion. And the first thing I would say about that is the court doesn't necessarily need to decide that question in this case in the way that it did in the stay opinion. The court could simply say that assuming for purposes of decision that there is some limited judicial review here, that review would have to be extremely deferential and the deference here isn't overcome and just be agnostic on the question of whether or not the statute vests this in the president's unreviewable discretion. But if the court does decide that it's necessary to reach and decide that question, we would urge the court to revisit the analysis in the stay opinion. Counsel, let me ask you a question about a sentence in Martin V. Mott where the court said, every public officer is presumed to act in obedience to his duty until the contrary is shown and a for sure I, this presumption ought to be favorably applied to the chief magistrate of the union. So what did the court in your view mean when it used the words until the contrary is shown? What does that mean? Well, I think Judge Bennett, that that part of the opinion was addressing the contention that defendant Martin's pleading was insufficient because it had not set forth the factual basis for the president's determination that there was a foreign invasion in that case. And the court said, no, the pleading is sufficient. The pleading doesn't have to get into that because there is this presumption of regularity that we presume that the president has made the determination. And so the presumption of regularity, I mean, not an axiom of regularity. I mean, that suggests that it is possible to overcome it. Right. I think what the court was talking about there, though, was whether the president had made a determination. So maybe if there was something that overcame the presumption that he had not actually made a determination about whether one of the listed exigencies existed, there could be judicial review of that. I actually don't take Martin to speak to that question. But Martin says expressly that the president's determination of whether the exigency has arisen. So when the president has made a determination that one of the enumerated exigencies exists, that that decision is vested in his soul and exclusive discretion and is conclusive on all other persons, including the court. Well, actually, Martin vs. Mott, the court says when the statute gives a discretionary power that is then based on certain facts. So the court is drawing a distinction between the discretionary decision about when an exigency exists, whether to call forth the decisions being made. And I don't see the court saying that the underlying determination of which is a factual question of whether the exigency exists is inherently discretionary. I took the court in that passage to be saying that all of it is vested in the president's unreviewable discretion. And that's why it wasn't even necessary for defendant Martin to plead anything about whether a determination had been made or what facts underlay that determination. Well, how do you deal with Sterling vs. Constantine then where the court again then says as the factual predicate, even discussing Martin vs. Mott is essentially a mixed question of long fact that is subject to some review. So to set the table on this, I broadly agree with analysis in the state opinion about both Martin and Luther. And I do think it is when we get to Sterling is where I think the court's analysis respectfully went astray because in Sterling, there were two issues that the court was discussing. One of them was whether a military exigency existed that warranted calling up military aid in support of civilian authorities. That's question one. And that's the question in this case. Second issue in Sterling was, what was the scope of the measures that they could permissibly undertake once the military had been deployed? Okay. And on that first question about whether the military exigency existed, the court actually reaffirmed Martin and Luther, cited both Martin and Luther and said, the executive is appropriately vested with the discretion to determine whether an exigency requiring military aid has arisen. His decision to that effect is conclusive. Well, how do you deal with the fact that in that case, what happened was a district court actually made on a contested record finding as a fact that the claimed exigency as a factual matter didn't exist. The court reviewed that decision said there was no clear error and affirmed on that ground that there was no, there was a finding of fact by the district court in that case that the claim exigency didn't exist. So I don't, I don't understand the Supreme Court's opinion in that case to have affirmed that decision. Again, at page 401 of the opinion, this is what the court said. The question here is not of the power of the governor to proclaim that a state of insurrection or tumult or riot or breach of the peace exists, and that it is to call military force to the aid of the civil power. That's not what they were reviewing. They said that the governor's conclusion in that respect was conclusive. Sorry to interrupt you, but let me go to the page before you're on, let me go to page 400. It does not follow from the fact that the executive has this range of discretion deemed to be a necessary incident of his power to suppress disorder, that every sort of action the governor may take, no matter how unjustified by the exigency or subversive of private right and the jurisdiction of the courts otherwise available, is conclusively supported by mere executive fiat. How do you reconcile your position on what the court is saying in Sterling with what seems to me to be a very clear sentence that there is discretion, but that doesn't mean the courts have to turn a blind eye to executive fiat? So I read that sentence to be discussing what measures the military can deploy once they have been called up. For example, in the next paragraph, I believe it's the next paragraph, it talks about whether the military can be used to effectuate arrests. And the actual question presented in the case was whether the governor could in essence declare martial law and by military order limit oil production in the state. So it wasn't a question of, is there an exigency that requires military aid? It was, what are the measures that can be taken? And does that extend to having a military order limiting oil production? And we do have another case that's coming up about the measures that are taken. But this case is solely about whether the exigency warranting calling up the National Guard existed in the first place. You literally said there was no exigency. I mean, that's just the court at 404 is affirming the district court's finding that there was no military necessity, no exigency, which justified the executive action. I think it's that last part is the key, Judge Song, which justified that action, the military exigency that they didn't question. They said the governor's determination was conclusive, couldn't justify the measures taken to limit oil production. Specifically, I mean, if we were to agree with you on this, that's the end of the case, but that's supposed to be done. And the state opinion was somewhat ambiguous on exactly what level of interference with the normal execution of the laws is required to satisfy 12406 paragraph three. Why shouldn't we read paragraph three in conjunction with paragraphs one and two, which refer to really significant events, an invasion or rebellion that are very disruptive of the normal functioning of government as requiring something of comparable magnitude in terms of the disruption to ordinary execution of the laws? So I don't have any objection to that. I do think you can read subsection three in light of subsections one and two, and in light of those provisions, say, as the panel opinion did say, that it needs to be some unusual exigency, something out of the ordinary. And I think the panel's specification of the standard as it being a significant impediment, something that's more than minimal, I don't have any problem with that standard under subsection three. Okay. But then I guess the question is, why is a couple of hundred people engaging in disorderly conduct and throwing things at a building over the course of two days of comparable severity to an invasion or a rebellion? Well, because violence is being used to thwart enforcement of federal law, and I don't... But violence is used to thwart enforcement of federal law all the time. Well... I mean, like the FBI goes to arrest somebody and he, you know, shoots at them or tries to run away, and that happens every day, right? But this is well beyond the sort of everyday resistance that you see to federal law enforcement. I mean, on the evening of Friday, June 6th, you had a crowd of roughly 800 people that assembled around the federal building and for five plus hours essentially laid siege to that building, throwing objects, concrete chunks at law enforcement officers attempting to use these large commercial dumpsters as a battering ram to breach the building. That went on for five hours that night. The crowd refused to disperse even after the LAPD showed up and declared an unlawful assembly and ordered them to disperse. The next day, they actually brought up from San Diego 110 Customs and Border Protection officers as a precautionary measure in light of the violence on Friday night, diverting those officers from their normal law enforcement duties. And even with those reinforcements, instead of being able to carry out the enforcement operation in Paramount on Saturday, you had seven hours of non-stop fighting is what the Santa Cruz Declaration says. Seven hours of non-stop fighting where they are again throwing objects, launching incendiary devices at federal officers, surrounding an officer in her vehicle and pounding on the vehicle and pummeling the vehicle with stones. This is well beyond the ordinary resistance that law enforcement encounters every day. I take it that the government's argument here is that even if the panel were to reject the argument that the president's determination is unreviewable, this would be an area where the alternative of significant discretion would come into play? Absolutely, because the judgment that the president has to make under subsection three, whether this is minimal everyday interference or whether it rises to the level of significant interference is really a question of judgment, a question of degree and not a question of law for a court. And that's why Congress vested this decision in the president's discretion. Can you address the argument in the amicus brief from Professor Graber that suggests that the historical understanding of unable to execute the laws was really turned on the question of are the courts open and functioning? Do you have a response to that? I think there's not any textual hook in this statute for that conclusion that you'd have to find that the courts are no longer functioning. There is language similar to that effect in the Insurrection Act, for example. I don't know that that provision, even with that language, requires the courts to be closed before the president could invoke the Insurrection Act, but at least that statute has language talking about the ordinary course of judicial proceedings. There's no language like that in section 12406. So, as you may recall, the district court in construing subsection 3 said that essentially law execution has to be wholly thwarted in order for the president to be able to call up the guard under subsection 3, such that if any law enforcement at all is able to proceed in the face of mild violence, the president can't call up the guard. The court correctly rejected that not even the plaintiffs defended. Instead, what the plaintiffs argue is that subsection 3 has some sort of exhaustion requirement where the president has to consider, I guess, every other law enforcement agent in the country and is unable to call up the National Guard to deal with a problem in LA unless he concludes that that problem can't be adequately addressed by bringing in every other law enforcement agent in the country. It does say with the regular forces, right? That's correct, and I would read... But you think that means with the regular forces, like, in that particular geographic area? I think that is the most natural reading of the statute, Judge Miller, that it's talking about the law enforcement officers who regularly enforce the law of that issue in the place where they're being opposed. But even if you read it more broadly to say this is all of the federal law enforcement officers at the president's disposal nationwide, I don't think it would change the analysis because it can't be the case that the president can only invoke subsection 3 when he can't address a particular problem with every law enforcement agent in the country. That would, in effect, render subsection 3 a nullity, and it fails to account for the basic reality that resources are finite. And so if the president calls in law enforcement agents from other parts of the country to deal with the situation in LA, that means the law is going unexecuted in those other places. That's, for example, exactly what happened when they brought up those 110 CBP officers from San Diego to address the situation in Los Angeles. So I think this is a statute that vests that judgment in the president's discretion, which is consistent with case law in many different areas that talks about these sort of executive branch resource allocation decisions being classically the subject of executive branch discretion and classically unsuited for judicial review. Can you just, I mean this I guess goes outside of the record of the order from June that is before us, but just can you tell us what the current state of things is in terms of how many National Guard forces are still federalized and deployed in Los Angeles? And there was a, I believe there was some mention in Judge Breyer's orders that the Marines had been called in. Are they deployed? What is the current situation? My understanding is there are no Marines currently deployed in Los Angeles, and the National Guardsmen have been dramatically drawn down. So initially it was in the range of 4,100 National Guardsmen from California who had been called up, and today it's about 300 that have been called up, with 100 or so deployed in the Los Angeles area. I was just gonna, I was sorry, I was just gonna say my understanding is now the order is essentially extended to February, is that right? That's consistent with my understanding, Judge Bennett. All right, sorry Judge Miller. I was just gonna ask if the number were to increase, that's not a new calling out that would be, I guess you don't think that any calling out is subject to review, but conceding for purposes of this question that the initial calling out is subject to review, if the number were to go back up, do you think that wouldn't be reviewable because it's just an extension of the initial call? No, I think if the President called up a new Guardsman who had previously been returned to state control, that would be under Section 12406, would have to be supported by a determination under Section 12406, and if that's reviewable, that would be reviewable as a new call-up order. Any further questions? No, thank you, Judge Miller. Okay, thank you. Mr. Harbert. Good morning, Your Honors, and may it please the Court. In granting a stay pending appeal, the Court recognized a need for judicial review, but did not engage in a detailed parsing of the statutory text at that preliminary phase of proceedings. This appeal provides an opportunity for the Court to reaffirm its justiciability analysis and to clarify the scope of limits under Section 12406, including by addressing defendant's extraordinary argument that there is no time limit whatsoever on the scope of a federalization under the statute. As to justiciability, the Court was absolutely right in its stay order to recognize a need for judicial review to ensure that defendant's actions comport with the limited authority provided by Congress pursuant to its Article I Militia Clause power to commandeer state National Guard personnel for federal service. The evolving circumstances over the past four months only highlight the judicial check in this area. Defendants have expanded their deployments well beyond Los Angeles. They've repeatedly extended the federalization of California's National Guard from 60 days to 150 days, and as of last week, 238 days. They've promised more of the same to come in ensuing weeks in other communities in this circuit and across. Do you have any reason to doubt your friend's representation that we're talking about about 400 now? About 400 California National Guard troops? Yes. Our understanding is that it's 300. I'm sorry if I misquoted your friend. That's correct. Our understanding is that 215 have been sent out of state hundreds of miles away, many to Portland, some to Chicago. There are about 85 remaining in Los Angeles, which I think underscores the point we've raised in our pending motion to vacate before the Court that there is no longer the same pressing need that defendants identified in June that would support continuance day pending appeal. What do you say to the that we just heard? There's a textual standard for when the President may call guardsmen into federal service, and as to the numbers, there's a textual commitment to the President's discretion on that, but as to the duration, the statute is just silent. What would be the rule that we'd be applying? Your Honor, I disagree that the statute is silent. I do think the text structure and the analysis in this Court's opinion, especially when read in light of the background constitutional framework, does not support defendants' assertion that after the Guard has been called up, they can remain in federal service indefinitely, and so as to the text, I think Your Honor pointed to the present tense in the text of Section 12406 is unable, the structure and the Court's analysis in its stay opinion emphasize that Section 12406 is designed to address extreme exigencies akin to rebellions or invasions. I think it would be pretty extraordinary to suggest that this authority to call forth state personnel, personnel that are the founding era evidence makes quite clear that our framers expected state militia personnel to ordinarily be under control of the states, that some exigency can be invoked and then provide a basis for permanently or indefinitely keeping the Guard under state control, and in terms of the standard, I think the Court could apply, could look to the same standard it looks to deciding whether Section 12406 is satisfied. Counsel, is that question before us with regard to the federal government's appeal? Is anything before us other than was the original order, can it stand? I mean, are extensions or the law relating to extensions or facts that occur on the ground after the District Court issued the order that was appealed? Are any of those issues actually before us in this appeal? Not in the appeal of the District Court's original injunction. Of course, they're at issue in the pending motion to vacate the stay that we filed a couple of weeks ago, but I will say the legal issue about the nature of the circumstances that justify invoking Section 12406 does have a direct connection to this argument that you've heard on the other side about whether there's a time limit under the statute, because in recognizing that the statutory criteria require showing of extreme exigent circumstances akin to a rebellion or an invasion, I think it naturally follows from that, that the federalization cannot just be indefinite in duration, designed to address extreme circumstances under Section 124063, where the regular forces, which we understand to mean federal civilian personnel, are unable to respond to the emergency. So, Counsel, I'm not certain that those issues are before us, but let's assume for the argument that they are. So, would it be your view that, let's say, that a court determined in the face of legal action that the President's initial call-up under Subsection 3 were justified? Is it California's view that, as a theoretical matter, California could come back to the court and say, you found that it was justified on September 1st, but we're now at September 4th, and it's no longer justified, and if you lose on September 4th, we're now at September 7th, and it's no longer justified? No, Your Honor, we don't take that extreme view. We don't think the statute... So, tell me what your view would be as to if there were a finding that it were initially justified, and your view is that it is justiciable and can be determined at some point as to whether it's continuing, the justification continues, how often could the court get involved? Your Honor, to step back, we think the appropriate approach here is to accord, you know, an appropriate level of deference and discretion to the President in determining whether the circumstances that justified the original federalization continue to exist. We acknowledge some need for flexibility on the part of defendants in this area, but I think there has to come a limit, and when it is no longer reasonable to conclude that the basis for the federalization continues to exist, and this gets back to your question, Judge Miller, about the standard courts could apply. I think you could apply a reasonable good faith standard in asking whether the exigent circumstances that initially supported the federalization continue to exist. In our view, the answer to that question is they no longer reasonably exist, and I realize I'm getting into some of the issues discussed in the motion to vacate rather than the appeal, but in our view, when you have the circumstances that existed on the ground in Los Angeles, June 6th and 7th, they have not recurred. We've cited declarations from state and local law enforcement officials as to conditions on the ground in Los Angeles. You also have defendants' own action, own words, and their own actions. They've repeatedly acknowledged the conditions on the ground have changed substantially, including the risk to federal personnel in Los Angeles, and then most tellingly, I think, was the action a couple of weeks ago where they professed an federalized California Guard troops 800 miles away to Portland and then proceeded to send 215 of those 300 troops and presumably would have sent the entire contingent if they had not been enjoined by the Federal District of Oregon. I think in those circumstances... So, counsel, let me ask you a question about something that definitely is not before us. Would, in California's view, the propriety of sending the California Guardsmen to, or Guardsmen and Women, to Portland be challengeable in front of Judge Breyer? Your Honor, there's certainly a factual nexus to the case before Judge Breyer, but we have not and intend to challenge it in that court. We're moving forward. We've joined the suit in the District of Oregon. Okay. Thank you. So, you mentioned this is sort of going, I guess, logically back a step to the question of what the standard of review is of the federalization decision. And you mentioned sort of reasonable good faith. We've said something sort of like in the stay order. Do you think that's the right standard of review or what are you asking us to apply? Your Honor, we continue to have some disagreement with the way the court specified the standard of review, in particular, the colorable basis language, which seems overly deferential to the President in circumstances like this one where you don't have some of the same sensitive foreign policy or national security concerns that were at issue in a case like Martin v. Mott. But I really don't want to overstate the importance of our disagreement with that standard because as we understand what the court was saying in its stay opinion, it was talking about deference to defendants as to the application of the statute to the facts of a given case, not deference to defendants in terms of the threshold purely legal question about how to interpret the plain terms on the face of the statute. And that is the area that we understand the core zone of disagreement between the parties. So if I could, if it'd be helpful, I can turn to exactly how plaintiffs would suggest the court construe the key terms in section 124063, unable with the regular forces to execute the laws. As we see it, that language gives rise to three related requirements. So the first, as the court already referenced in its June stay order, would be a showing that there is an exigency or other unusual circumstance akin to a rebellion or an invasion in terms of interference with the ordinary functioning of government. Second related requirement would be showing that the level of that interference is substantial, again, akin to what you would expect to see during a rebellion or an invasion. And the third would be that the federal government is unable to overcome that level of interference with the regular forces, meaning civilian as opposed to military personnel. We don't think that the record satisfies those requirements, or the record shows that defendants have not satisfied those requirements here. Before the district court, defendants introduced two declarations. The first is the NEL declaration that's at ER 39 to 42. That discusses only the logistics of calling out the guard, deploying them in L.A. We don't understand that to be relevant to the statutory question. The second is the Santa Cruz declaration from the head of ice removal operations in the Los Angeles area. That's at ER 53 to 65. It walks through the conditions on the ground in L.A. at the time on June 6th and 7th. It describes certain forms of with the task performed by agents with two federal agencies, ICE and the Federal Protective Service. I think the closest that that declaration comes to trying to satisfy the textual standard I just mentioned under section 124063 is at paragraph 33, this is ER 64, where Mr. Santa Cruz professes his belief that, quote, additional manpower and resources are needed to address the circumstances in Los Angeles. The problem as we see it is there's no effort whatsoever to explain why military forces were necessary, why it was necessary for the federal government to rely on military forces to supply that manpower, those resources. When there are civilian law enforcement measures that are generally available to the federal government during emergency circumstances that would ordinarily supply that kind of additional manpower or personnel. And we know that there are those additional measures such as calling on civilian personnel from other nearby cities or calling on personnel from other federal agencies because that's exactly what defendants have told the court in filings with the court. In particular, I point the court to docket 136, the opposition filed in response to our motion to vacate. Defendants attached two declarations from senior FPS officials who explain that in emergency by drawing on FPS agents from other cities. You can see that at docket 136, SA 11, 15, and again at 20. There's also an acknowledgement at SA 14 as to the ability of FPS to rely on personnel from other federal agencies, specifically ICE in times of emergencies. Now, those declarations go on to say that the federal government does not view these measures as long-term solutions. They see them as short-term emergency responses and in the long-term, defendants say those types of extraordinary measures stretch the FPS budget, they strain FPS staffing levels. But what we would respectfully suggest to the court is that those may well be legitimate concerns. We have no reason to doubt that those are legitimate concerns, but they're not the concerns properly addressed through section 12406. As the court recognized in its state order, section 12406 is designed to address extreme exigencies akin to rebellions or invasions. There is another mechanism in our constitutional structure for the president to address long-term budgetary or staffing issues. It's to go to Congress and ask Congress to exercise its appropriations clause authority to give the president, give the executive branch, increased resources so that it can staff up as it deems necessary. There's no history of using the National Guard personnel of commandeering state resources as a substitute for long-term budgetary or staffing issues. And we know that this is not just a theoretical possibility to go to Congress and get increased appropriations because the president did that this year, just a few months ago. In July, the president prevailed upon Congress to vastly increase the budget of the Department of Homeland Security, including by literally tripling the budget of ICE, unprecedented increase in the agency's history. So we respectfully submit on this record, especially in light of the concessions you now have from defendants in this very case, that there are alternative civilian law enforcement measures generally available in the face of exigent circumstances. And there's no explanation in the record, none, as to why those measures were unavailable or infeasible here. Can I ask you a couple of questions about the separate, I guess it's a separate appeal, the Posse Comitatus Act injunction stay question. And the first is just a factual question. We entered an administrative stay at the beginning of September. Since then, in your view, have the, well, have any federal forces been engaged in conduct that would have violated the injunction had it not been stayed? Your Honor, I'm not aware of facts one way or the other as to that issue. Defendants have professed an intent to use the guard for those purposes in Los Angeles, and they've emphasized in their stay papers before the court that there are two, I believe they're called mobile units, that they have prepared that can be deployed into the field in the types of circumstances that we've challenged in that case. But as far as the current factual state of affairs, I'm just not in a position to address that. If you were to prevail in the principle appeal, the 12406 appeal, I don't know whether it would technically moot the PCA appeal, but would there be much practical significance left to the question of the Posse Comitatus Act injunction? I believe there would be limited practical significance in terms of formal mootness. It's not something I've given a lot of thought to. I suspect that there may well be a mootness exception that could apply. We'd have to consider that and give it further thought in light of all the moving pieces in the National Guard litigation, which has multiplied significantly since the last time we appeared before the court. And then I guess one other question on this, which is what do you understand the injunction, the Posse Comitatus Injunction, to permit the Federalized Guard and other federal military forces to do? And specifically, I'm asking about the last paragraph of the injunction that says they're prohibited from doing various things, except to the extent that there's a valid constitutional or statutory exception. And it wasn't clear to me what the order contemplated by that. So what is your understanding of what's allowed? Your Honor, our understanding is that it allows protection of federal buildings, so long as that is not escalated to types of activities that would clearly contravene the Posse Comitatus Act, so detentions and arrests and so forth. But as long as the Guard is deployed merely for protective purposes at federal buildings, we don't understand Judge Breyer's order to restrict that activity. Although that's not what the last paragraph of the order actually says, right? I think read in light of the district court's analysis as to this issue, where the court specifically reserves and addresses separately the question of protection of federal property, that's how we understand the injunction. Although what the order actually says is they're enjoined from, I mean, some of what they're enjoined from is instructing, training, or using the Guard to execute the laws, including but not limited to things like security patrols, evidence collection, interrogation, or acting as informants. That's what it says, right? That's my understanding. So, for example, what does it mean that they are enjoined from interrogation? And I think it restricts the ordinary meaning of the term interrogation, which is, you know, that's a term that appears in the definition of prohibited Posse Comitatus Act activities in the instruction DODI 3025.25, which is the longstanding Defense Department guidance on the scope of the Posse Comitatus Act. So, I think you could look there into additional instructional manuals provided by the Defense Department themselves about the meaning of those restrictions, which has been in place for quite a long time. So, like for evidence collection, if it wouldn't mean that they couldn't pick up a bag of methamphetamine that they saw while they were on patrol. Your Honor, I confess I'm not in a position to answer that precise question today. Okay. If I could, Your Honors, with just the remainder of my time, turn briefly to the rebellion prong in Section 124062. We think the court was right in its order to focus on Section 124063, and that's principally because defendants have not put forward a credible understanding of the term this litigation. We would respectfully ask the court to consider reaching and rejecting the defendant's interpretation of that term in its opinion here. The reason is that we're continuing to see defendants rely on this interpretation cases across the country, and we're concerned that the breadth of the definition of rebellion that the government has relied on, which includes on its terms any form of resistance to government laws and policies, which would appear to encompass a range of First Amendment protected speech and protest activities. There's a real risk that when you have senior executive officials discussing that broad definition and threatening to call in the military in response to it, that protected speech activities will be chilled. We would ask the court to join the Seventh Circuit in rejecting that view to ensure robust free speech protections continue across the country. You would concede that there may be more relevant legal determinations coming in the next couple of weeks on the there may well be, Your Honor. I think the Supreme Court takes different approaches to the type of emergency proceeding that's now pending. And then finally, Your Honors, just as to justiciability, again, as I mentioned at the outset, we think the court got it exactly right in holding defendant's actions here subject to judicial review. The court explained that its state order statutory interpretation falls squarely within the ordinary zone of judicial review and the judiciary's responsibilities. We also think it would be exceptionally odd to consider the types of Militia Act determinations here non-justiciable in light of the constitutional and statutory history dating back to the very first Militia Act in 1792, which actually required judicial certifications before the president could invoke aspects of the Militia Act. Of course, that requirement was stricken from the statute, but it's very early founding era evidence that these are exactly the types of questions that our founding fathers considered to fall within the cognizance of the Article III judicial power. If the court has... Well, it's not clear to me how we were dividing time between the 12406 appeal and the motion for a stay of the permanent injunction on the PCA ulterior cause of action. So if we're combining them, we may have another question in that most of the focus has been on the 12406 issues. On the PCA, do you have a response? To the defendant's argument about the willfulness element? I do, Your Honor. We acknowledge that the willfulness requirement appears in the text of the PCA. We don't think it's especially relevant to an assessment in this posture where we're seeking only prospective injunctive relief because, as I understand defendant's argument on this score, it's that their conduct wasn't willful because... Not because it wasn't intentional. It was directed by high-ranking officials, but because there was a misunderstanding of the scope of what the PCA limits. But on a going forward basis, there will be no such confusion because the law has been clarified by Judge Breyer's opinion and presumably by an opinion reaching the merits from this court. So any violations would necessarily be willful because they would understand the legal requirements going forward. It's a little tricky, though, because your ultraviarious argument is premised on the existing violation that a violation has occurred. I think as a formal matter, Your Honor, we're arguing that there is a sufficient risk of future violations to justify ultraviarious injunctive relief and the past violations, whether or not they satisfy the willfulness requirement, although we think they do for reasons provided by the district court, the activities show, violating the substantive terms of the PCA, show a sufficient likelihood of... To put it another way, Your Honor, if you agree with everything about our PCA arguments except for the willfulness issue, just assuming that for sake of argument, then the willfulness issue would not be a barrier to granting prospective injunctive relief because that falls away on a going forward basis. There's a sufficient likelihood of recurring violations. And do you have any authority for that proposition? Your Honor, in our motion, we relied on common sense. We also pointed by analogy to the en banc decision in Dreyer, which was somewhat similar. It wasn't injunctive relief, but it was looking to perspective, the issue of perspective violations enforceable through suppression motions in criminal cases. So that, again, first of all shows that the PCA has been deemed enforceable outside of criminal charges brought under the Posse Comitatus Act. And also... But you concede, counsel, as the United States argues, that you haven't cited a case, nor are you aware of one in which any government has been enjoined or the federal government has been enjoined from enforcing based on a criminal statute. No, Your Honor, we disagree. There are a range of cases we cite to an example from the DC circuit in our brief where criminal statutes have been enforced civilly through the Administrative Procedure Act. I certainly acknowledge this isn't an Administrative Procedure Act suit, although we do have a claim on that basis preserved in our complaint. But our point is... Has there ever been an injunction? Yes. Yes, under the... Involving a criminal statute? Yes. And what was the nature of the injunction? It was an injunction to enforce the Criminal Trade Secrets Act, which the Supreme Court in the Chrysler decision held is enforceable civilly, even though it's a criminal statute, through the Administrative Procedure Act in courts that on a fairly regular basis grant injunctive relief under the APA to enforce that criminal provision. And our point here, even though this isn't an APA suit, it's an Ultra Vira suit, is if the Supreme Court hasn't been willing to draw the categorical per se line, the defendant's request between criminal and civil enforcement in the APA context, we see no reason to draw that categorical line when it comes to an Ultra Vira's cause of action like ours. You agree that we are bound by the statement in the NRC case where the court said this type of claim is essentially a Hail Mary pass, and in court, as in football, the attempt rarely succeeds? We agree that you're bound by the decision, of course, but we don't think the decision applies in the circumstances here for two reasons. NRC was a case where there was a... It was an Ultra Vira's claim in a case where there was an express statute there, the Hobbs Act, imposing limits on review and precluding review. And so what you had was Texas, the plaintiff there, was trying to circumvent express limits on review under the Hobbs Act by simply styling its claim as an Ultra Vira's claim. We don't have that here. The federal government has not pointed to any express limitations on the ability to bring an Ultra Vira's action enforcing the Posse Comitatus Act. Another important dimension is that the claim in NRC was purely statutory, but as the en banc court made clear in the Dreyer decision, the Posse Comitatus Act is no ordinary statute. It's a statute with an important constitutional dimension, and under this court's precedent in Murphy v. Biden, Ultra Vira's claims are broadly available when a statute has constitutional implications. I think that NRC, you argue in your briefing, even assuming the NRC standard applies here, I understand your argument as do I, does not that the standard has been met, the NRC seems to identify two requirements at least. One is the attempted exercise of power specifically withheld or specifically prohibited, and no other avenue for judicial relief. Can you address those two requirements? Yes, Your Honor. On the assumption that NRC is applicable, which we disagree with, for the reasons provided by the district court, we think that restrictions in the PCA are clear and binding and were plainly violated here on a widespread basis, and as to the availability of another action for judicial review, I want to be somewhat careful on this because we do have the APA alternative preserved in our document. We haven't moved on that to date. To the extent the court agreed that the APA provides an avenue for review, that may present a challenge on that second prong of NRC, but assuming the APA does not provide a challenge, a basis for review, then I think that would be satisfied because there would be no other way to enforce the PCA in these circumstances. And just quickly on the Administrative Procedure Act issue, I know that in general it can feel a little odd to think about enforcement of the APA in a context like this one involving military orders, but the text of the APA actually expressly defines agency action subject to review to include exercises of military authority except in the field of conflict in a time of war, which plainly would not fall into. Again, we haven't moved on our APA claim to date, but just for the court's awareness, the extent it considers that issue and evaluating the ultra-virous cause of action. Okay, can you just briefly address why isn't 12406 an exception to the PCA? It says the President can call members of the Guard in such numbers as he considers necessary to execute the laws. How do we make sense of that if what they're doing is not executing laws? Because the Posse Comitatus Act, as we understand and as courts have interpreted it, does not bar every form of law execution. It bars the execute the laws clause in the Posse Comitatus Act should be read in light of the clause forbidding actions as a Posse Comitatus. So the historic policing-related activity performed by citizens in support of a local sheriff or constable, the way that's generally been understood is to bar law enforcement actions of the sort that police generally execute. So things like search and seizure and interrogation, evidence collection, brandishing a weapon, and as the Department of Defense has explained, things like security patrols and crowd control, traffic control, the sorts of things that the Department of Defense has been doing on a widespread basis. Can I cancel to go to ask another question like Judge Miller's question? Even if your view, California's view, were arguable, given the standard for Ultra Vira's relief, I'm having a hard time seeing how the exception in 12406 to execute the laws wouldn't count as an exception under the PCA in an act of Congress, at least to the extent that there's enough ambiguity that this couldn't possibly be Ultra Vira's. I mean, I understand your argument, but I just, for me, I don't see it as nearly clear enough to justify Ultra Vira's relief given the language that Judge Miller cited that obviously is in the statute. Why am I wrong? Your Honor, I certainly want to acknowledge that if you're going to apply that Hail Mary standard from NRC, that makes it a much harder case for us in terms of the availability of Ultra Vira's relief. I do want to underscore, we have, I think, very powerful arguments that NRC was not addressing circumstances like those at issue here, and this court had very clear pre-NRC precedent. The Murphy versus Biden case is the main one we've relied on that takes a broad view of the availability of Ultra Vira's relief, and so that decision would be binding on this panel unless NRC clearly abrogated it, and I don't think that standard is satisfied. As to the question about, again, why 12406 does not constitute an exception to the PCA, the exception has to be expressed under the PCA's plain terms, and as we read the PCA, it doesn't bar all law execution, all forms of law execution, and so that 12406 is authorizing law execution in general. It's not authorizing the specific types of law enforcement activities that would fall within the Posse Comitatus Act scope. Well, I mean, there's some, I've tried to compare 12406 with the Insurrection Act language because it seems that the Insurrection Act is conceded to provide an exception to the Posse Comitatus Act, and interestingly, the Insurrection Act seems to make it much more clear that it authorizes both a calling forth into federal service and then use of the armed forces. It literally says, and use such of the armed forces, and that turn of phrase does not exist in 12406, and then there is some tension with, I think, the parties' views about what constitutes execution of the laws, whereas the federal defendants are arguing merely providing a protective detail is not execution, so I think one way that could be reconciled with the difference in language between 12406 and the Insurrection Act is to say that 12406 might authorize the force, but to not execute the laws, but merely to enable civilian law enforcement to execute the laws and that the troops would not be directly engaged, essentially, in the way prohibited by the PCA, but that would, that's, in my mind, is one way to reconcile textual differences between these different statutes and what I understand to be that are historically how we've interpreted in our precedent what the scope of the PCA is. Do you have any objections to that view? We don't have any objections to that view, and it's certainly a reasonable way to reconcile the different statutory requirements here, and it would go part of the way towards explaining a little bit of the historical oddity of section 12406 and its redundancy to some degree with aspects of the Insurrection Act. There is this strange question lurking about what section 12406 is doing, and partly that question is lurking because it's been so seldom used. It's only been used once in the history of our country since it was first enacted 122 years ago, and there's generally been an expectation that if the President has extraordinary, if the circumstances are extraordinary enough to justify calling out the military for a domestic deployment, that that would rise or fall under the Insurrection Act, so I think that is a plausible way to reconcile the competing statutes here. The other thing I'd say, Your Honor, that we think is dispositive on this issue is that if you look back the history of the Insurrection Act and the Posse Comitatus Act, from literally the year the Posse Comitatus Act was passed, the Defense Department puts out a guide essentially to all of the statutes that it considers to fall within, to qualify as exceptions under the Act, maintain that list, you know, over that 150 years or so since the PCA was enacted. It's always included what is now known as the Insurrection Act. It's never included what is now section 12406, and so that's relevant to statutory interpretation because even if, from a modern contextualist standpoint, we wouldn't see as a matter of first principles the Insurrection Act being the type of express exception that the Posse Comitatus Act demands, there's that long-standing history of executive branch interpretation, and Congress has operated against the backdrop of that and repeatedly recodified both the PCA and the Insurrection Act. So we think that that historical understanding of treating it as an exception to the PCA has essentially been ratified or acquiesced in by Congress. You don't have anything like that in the case of section 12406, and it's just, it's very telling again and again and again when the Defense Department puts out the list of statutes it considers to be an exception to the PCA. The modern equivalence, the historical equivalent of section 12406 is never there, including there's a version of this list that was published just weeks or just a few months after the enactment of section 12406 in January 1903. Surely if executive branch officials and Congress had intended it to operate as an exception to the PCA, we would have seen it on that list right after the 1903 Militia Act was passed. Thank you. Any further questions? No. Thank you, Judge Miller. Thank you. Rebuttal? Unless the court has specific questions, I just have a few points to make on the 12406 calling up question. The first is to respond on the question of rebellion. Of course, the court does not need to reach the issue of rebellion if it agrees that the calling up was authorized here under section, subsection 3 of the statute on law execution. But if the court does reach that question, I would commend to the court Judge Nelson's opinion in the Oregon case from earlier this week that I think marches through in detail the historical understanding of rebellion that refutes the principle basis on which the district court here concluded that subsection 2 could not be met because the district court said for it to be rebellion, it has to be aimed at overthrowing the government as a whole. That's inconsistent both with the ordinary understanding of the word rebellion and it's inconsistent with key historical precedents in which presidents called up the guard in order to suppress rebellions like the Whiskey Rebellion, which was not aimed at overthrowing the entire government. It was aimed at opposing a particular excise tax, a particular law. And there's certainly nothing in our position, in our understanding of the term rebellion that would allow the president to conclude that there was a rebellion based on First Amendment protected activity. We're talking about violence here through force and arms opposing the laws and operations of the government. The second point I wanted to make has to do with the exhaustion requirement that Mr. Harbert spoke about. It really is quite an extraordinary suggestion that in this statute that is dealing with emergencies. The Supreme Court in Martin said sorts of emergencies that require prompt and unhesitating obedience. The idea that the president would have to come to court and explain in detail why he concluded that these forces were to call up as opposed to using these other forces. That of course is something that is within the president's discretion to do. That's what the president did, for example, in Portland where there was significant unrest also in June and the president first tried to meet that with the regular forces and only ended up calling up the guard when that became unsafe and unsustainable. But it's also within the president's discretion to do what he did in LA and to look at that situation and say this is widespread violence where there's a serious risk of this escalating and getting out of hand rapidly and immediately calling in the guard based on a determination that the regular forces can't handle this situation. And then the final point I wanted to make on the question of the time period. As I mentioned at the outset, Judge Miller, the, when this statute was originally enacted in 1903, it authorized the president to, it shall be lawful for the president to call forth the guard for a period not exceeding nine months. That was section four of the statute. Section five then said that the president may specify and has called the period for which such service is required not exceeding nine months. Congress has removed that language from the statute, I think quite clearly vesting that determination in the president's discretion. Of course, we think the calling up is in the president's discretion. And the final point that I would make on that is I understand that it makes courts uncomfortable. The idea that something would be completely vested in the executive branch discretion with no judicial review. That was not a point that was lost on the Supreme Court in either Martin or Luther. Both cases expressly addressed that point. And in Martin, the court said the frequency of elections and the watchfulness of the representatives of the nation carry with them all the checks which can be useful to guard against usurpation or wanton tyranny. And then in Luther, the court said, if the president and exercising this power shall fall into error or invade the rights of the people of the state, it would be in the power of Congress to apply the proper remedy, but the courts must administer the law as they find it. We would ask the court to vacate the injunction. Can I ask you just one? The basis for the 1206 injunction was an ultra virus theory. And you have devoted much of your argument against the Posse countenance act injunction to the idea that alters injunction is unavailable, but you haven't made a similar argument with respect to 12406. We haven't. We haven't built the ultra virus standard in the 12 on the 12406 issue. Of course, we think that's not reviewable at all. But if you get past that, then it is the ultra virus standard. And that's because Congress has never enacted a statute either specifically with respect to 12406 or generally subjecting presidential determinations to judicial review. President is not an agency under the APA, and so the only possible cause of action is the ultra virus cause of action. Supreme Court, to my knowledge, has actually never held that that cause of action can be used to bring a claim that the president exceeded his authority under a statute. Court reserved that question in Dalton, but even setting that aside, the court's recent decision in NRC makes quite clear, as the court has noted, that that is a Hail Mary pass, and garden variety errors of fact or law do not suffice under that standard. It has to be blatantly lawless action where the agency is acting contrary to a specific prohibition in the statute or entirely in excess of delegated powers. Of course, there is no specific prohibition in section 12406. It's an authorization. Constitution gives Congress the calling force power, right? So the president's only ability to call forth is that which was delegated to the president by Congress by statute. The president has absolutely no constitutional authority to call forth militia except to the extent granted by Congress. Is that correct? I agree with that. But that's what makes this claim that that the president is exceeding his authority under the statute. That's the claim that they're making that he's acting ultra virus because he's called forth to guard in circumstances that don't meet any of those enumerated subsections. And even if there were judicial review of that, it would it could only be this ultra virus standard where you're asking, is there a specific prohibition? No, there's not a specific prohibition that he's violated. Has he acted entirely in excess of his delegated powers? I think at a minimum, as long as there is the sort of colorable basis, in fact, on law. That's confusing the merits with the existence of a cause of action. I think the two sort of merge when we're talking about the ultra virus standard, because the court has said that cause of action is available only for those sorts of violations and not for garden variety errors of factor law. So counsel, Judge Miller, can I ask a few questions about the PCA? So your friend indicates that vis-a-vis the PCA issue, he believes that NRC is inapplicable. Could you give, I know you address NRC in your PCA filings, but could you that argument here? Sure. So again, we don't think there's any available cause of action for a plaintiff to challenge an alleged violation of the Posse Comitatus Act because it's a criminal statute. And the ultra virus cause of action has never been extended and used for an alleged violation of a criminal statute. And I think as the Supreme Court NRC was quite clear, they had been looking to put limits on that cause of action and not expand it into new territory. And so applying it to an alleged violation of a criminal statute would be something new that doesn't have sort of a longstanding analog and equitable practice. But even setting that aside, if there is some cause of action here, it could only conceivably be the ultra virus cause of action. That's certainly the only one on which Judge Breyer ruled that's the basis for the to meet that very stringent standard in order to obtain relief. And they can't possibly meet it here for all of the reasons that we outlined in our motion for a stay. All right. My second question on the PCA is your friend has indicated that the exception or that the ability of the execute the laws that that doesn't count under the PCA as a circumstance expressly authorized by an act of Congress for a variety of reasons that he outlined in argument and in the briefs. And I know you again address this in your pleadings, but could you address it here? Why, if we got to consider this in the ultra virus context, whether your position on whether that does constitute the type of exception described in 1385 as something expressly authorized by an act of Congress? Absolutely. It qualifies as something expressly authorized by an act of Congress. And I frankly have a hard time understanding how it could not be the section 12406 expressly authorizes the National Guard when it has been federalized to execute the laws that the president determined that the regular forces were unable to execute. So there's an express authorization to execute the laws. I fail to see how that could fall outside the language of the Posse Comitatus Act that says except in cases and under circumstances expressly authorized by an act of Congress. Well, one of the arguments your friend makes in his PCA pleadings, which you may have addressed, but I didn't see it, is they cite 10 U.S.C. 12405 and talk about how even members of the Guard called into service are subject to all laws and regulations, et cetera, which would include the PCA. So what's your response to that? And again, I didn't see it in your pleading, but I might have missed it. I mean, I guess that strikes me as a bit of a chicken and egg problem, but I don't think that language would override the express authorization in section 12406 to execute the laws. I mean, subsection three of section 12406 would effectively be nullified if you said the National Guard couldn't execute the laws that the regular forces were unable to execute and therefore the president called up the Guard to execute them if they couldn't do that without violating the Posse Comitatus Act. Judge Miller, thank you for letting me ask those questions. All right. Thank you very much. We thank both counsel for their helpful arguments and the case is submitted and we are adjourned. All rise. This court for this session stands adjourned.
judges: BENNETT, MILLER, SUNG